Derbigny, J.
delivered the opinion of this court. The defendant and appellee bought from Francis Hudson, an inhabitant of the Attakapas, a negro woman whom the plaintiff and appellant claims as his own. On the latter therefore does the burden of the proof lie. The evidence of the title to a slave must be written, unless due proof be made of the loss of the written evidence. None such is produced by the plaintiff; but he has endeavoured to establish by oral testimony, that he once had a private bill of sale of the slave in dispute, and that this instrument was in the possession of the vendor of the defendant and appellee. He also offered to precure another bill of sale of the person from whom he bought the slave; and for that *565 purpose he requested that a commission might issue to have that person examined: and as the refusal of this commission has been subject of a bill of exceptions, which comes up with the record, we are first to dispose of the question arising thereon.

East'n. District.

Jan. 1817.
The reason given by the district judge in refusing the commission was, that the application was made too late, viz : after the expiration of the time, within which the rules of his court require commissions to be applied for. The judge also refused to sign the bill of exceptions considering that the sustaining or rejecting such applications was a matter of discretion, in the exercise of which he could not be ruled by the supreme court.
These two questions, the latter of which is certainly of some moment shall, however, remain undecided, it appearing on the face of the affidavit, made to support the application, that the document offered to be procured, could not, if obtained, be received in evidence to supply the loss of the original title. We do not deem any explanation necessary, and therefore pass to the merits of the case.
The first question is, whether the plaintiff has proven the loss of his written title, so far as to *566 be entitled to supply its production by parol evidence. The expressions of the law on this subject are as follows : "in order that the judge may admit the deposition of one or two witnesses to supply the loss of the title, the fortuitous event, which occasioned the loss of the title, which formed the literal proof must be established. For, he who requires to be admitted to produce testimonial proof, and merely alleges that he has lost his title, without any fact appearing, or overpowering force, owing to which he has lost it, cannot be admitted to give testimonial proof that it existed.” Civil Code 312, art. 247. A fortuitous or overpowering force, owing to which the loss did happen, must then be first proven before oral testimony of the title can be received. In this case, no fortuitous event is alleged ; proof has only been made that the written title of the plaintiff passed (it is not said how) into the possession of the defendant’s vendor. If no more had been shewn, that certainly could not have been considered as a loss of the paper, far less as a loss by a fortuitous event or overpowering force: because, this vendor, for aught that appears, might have received the paper from the plaintiff himself. But, from all the evidence which is spread before us, we think it can be collected that the paper was ei *567 ther taken or retained by the vendor of the appellee, against the will of the appellant. The question therefore now is, whether this circumstance shall be considered as a loss of the paper to the plaintiff. Generally, when an important document is withheld by the adverse party, the party is to call on him to produce it. But the vendor of the appellee, altho’ he appears to have volunteered his services in favour of the appellee, is not a party to this suit, and could not thus be called upon. He might indeed have been summoned as a witness, and served with a subpoena duces tecum : hut this was a step, which the majority of the court, (Martin, J. dissentiente) think that the plaintiff and appellant was not bound to take, and to which he probably did not think proper to resort, considering the conduct which that vendor had pursued in the course of this transaction. The plaintiff then rests his proof of the loss of his title, on the circumstance of its having passed, without his consent, into the possession of the appellee’s vendor, the very person against whose abuse of it, he now complains, and whose interest, it is by concealing that document to prevent him from shewing a title to the property which he claims. A majority of the court, think that such a proof amounts to a proof of loss by an overpowering force, *568 and that were it not so, it would be impossible in cases of embezzlement of titles to make proof of ownership.
This point being settled, the next is attended with no difficulty, the verbal evidence produced by the plaintiff abundantly shewing that the plaintiff was the owner of the slave in dispute, when the defendant’s vendor undertook to dispose of her.
But should this evidence of title in the plaintiff and appellant, though strong in itself be deemed imperfect, it is placed beyond doubt by the affidavit of Hudson, under whom the defendant and appellee claims. It is true that he does not appear to have been regularly cited to defend her title, yet she causes him to make an affidavit in her behalf, in which among other things he states the materiality of certain witnesses to prove that he was duly authorised by the plaintiff to sell the slaves mentioned in the petition: afterwards several commissions having issued to take the depositions of several witnesses residing out of the districts, we see the defendant interogating them in every instance, as to the authority given by the plaintiff to Hudson to sell the slave here sued for: thus evidently shewing that she claims under him.
*569 It remains now for us to decide whether Hudson was authorised by the plaintiff to make the sale relied on by the defendant. On the existence of any authorisation at all, the evidence is various; and, if it were necessary to ascertain the fact by close examination, it would probably be found that he had not even received a verbal authorisation to make that sale. But, however, that may be, it is certain that the plaintiff did not give him any written power for that purpose. Hence, it is contended by the plaintiff that a verbal order supposing one of them to have been give in this case, is insufficient to authorise the sale of any immoveable property or a slave.
The general rule, with regard to the sales of immoveable property or slaves is this: “Every “ covenant tending to dispose by a gratuitous" or incumbered title of any immoveable pro-“property or slave, must be reduced to writing, “and in case the existence of such covenant “should be denied, no parol evidence should be “admitted to prove it. Civil Code 310, art. 241—The object of the law is evidently to place the title of the owners of an immoveable property or slave, beyond the reach of oral testimony. But that object might be defeated easily, if witnesses could be heard to shew that the owner of *570 such property had verbally authorised another person to dispose of it. Therefore, altho’ the law permits a power of attorney to be given even verbally, it provides that the testimonial proof of it shall be admitted only conformably to the title of contracts or conventional obligations in general. Clearly restraining that testimonial proof to cases where the contract, to be entered into, by virtue of such a power, is one of those which can be proven by oral evidence.
Some question has been raised by the defendant, as to the indentity of the slave by her bought from Hudson, and the slave here proved to be the property of the plaintiff. But, the general course of the pleadings, and particularly the production, by the defendant, of Allen’s written message to Hudson, the testimony of Nathaniel Cox, who appears as a guarantee in the bill of sale made by Hudson to the plaintiff, and the affidavit of Hudson himself, establish that indentity beyond all doubts.
It is ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed, and that the appellant do recover from the appellee the negro woman Mary and her two children, claimed in the petition, with costs.
Carleton for the plaintiff, Depeyster for the defendant.